1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

DRAKE FELDE,

Case No.  1:19-cv-00339-NONE-HBK

12

Plaintiff,

ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS AND DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE

13

v.

14

D. WILKINS and I. OGBUEHI,

15

Defendants.

(Doc. Nos. 25 & 67)

16

17

18

        Plaintiff Drake Felde is a state prisoner proceeding *pro se* in this civil rights action under

19

42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge pursuant to 28

20

U.S.C. § 636(b)(1)(B) and Local Rule 302.

21

        On March 26, 2021, the assigned magistrate judge issued findings and recommendations

22

recommending that defendant D. Wilkins's motion for summary judgment on the grounds that

23

plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. No. 25) be

24

granted.[1]  (Doc. No. 67.) On April 19, 2021, plaintiff filed objections to the findings and

25

recommendations, and defendant filed a response thereto.  (Doc. Nos. 68 & 69).  Plaintiff filed an

26

27

---

[1]  Although there are two defendants in this action, only defendant Wilkins has moved for

28

summary judgment.  (*See* Doc. No. 25 at 1.)  Hereinafter, all references to "defendant" refer to defendant Wilkins only.

1

1  unauthorized reply to that response, which the magistrate judge struck.  (Doc. Nos. 71 & 72.)

2  In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court has conducted a

3  *de novo* review of this case.  Having carefully reviewed the file, including plaintiff's objections

4  and defendant's response to those objections, the court declines to adopt the findings and

5  recommendations.

6  **DISCUSSION**

7  **A.  General Standards for Exhaustion**

8  The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, provides that

9  "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

10  any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

11  such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  California's

12  regulations define what constitutes proper exhaustion.  *Marella v. Terhune*, 568 F.3d 1024, 1027

13  (9th Cir. 2009

14  Because only *available* administrative remedies must be exhausted prior to filing suit, a

15  prisoner need not exhaust unavailable administrative remedies.  The United States Supreme Court

16  has noted three general grounds for unavailability.  *Ross v. Blake*, ___U.S.___, 136 S. Ct. 1850,

17  1859 (2016).  First, administrative procedure may be "a simple dead end—with officers unable or

18  consistently unwilling to provide any relief to aggrieved inmates."  *Id.*  Second, "an

19  administrative scheme might be so opaque that it becomes, practically speaking, incapable of

20  use."  *Id.*  Third, administrative procedures are unavailable "when prison administrators thwart

21  inmates from taking advantage of an administrative grievance process through machination,

22  misrepresentation, or intimidation."  *Id.* at 1860.  This list of how administrative remedies may be

23  rendered unavailable to a prisoner is non-exhaustive.  *Andres v. Marshall*, 867 F.3d 1076, 1079

24  (9th Cir. 2017).

25  **B.  Plaintiff's Failure to File Grievance Within Thirty Days**

26  Under the then-existing regulations for the California Department of Corrections and

27  Rehabilitation, plaintiff was required to submit his inmate appeal on a 602 form within 30

28  /////

1    calendar days of the relevant event. Cal. Code Reg. tit 15 § 3084.8(b) (2016).[2]  The parties agree

2    that plaintiff did not submit an inmate appeal within thirty days of his allegedly being shot on

3    March 3, 2016 at Wasco State Prison (WSP).  The central dispute in connection with the pending

4    motion for summary judgment is whether administrative remedies were available to plaintiff.

5            In his declaration submitted in opposition to the motion plaintiff states that he was in the

6    hospital and CTC (presumably, the Correctional Treatment Center at WSP)[3] for a total of 47

7    days.  (Doc. No. 40 at 12.)  It is undisputed that plaintiff lacked access to 602 inmate appeal

8    forms while he was hospitalized for seven days, and defendant admitted that the hospital "did not

9    have the inmate 602 appeal process established by CDCR under Title 15 of the California Code

10   of Regulations.  (*Id.* at 3 (plaintiff's declaration), 206 (defendant's response to request for

11   admission number 4).)  Thus, for the first seven days, the inmate grievance procedure was

12   unavailable to plaintiff.  *See Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (reversing

13   the district court's grant of motion for summary judgment on the issue of exhaustion and

14   remanding for further factfinding because the plaintiff stated that the hospital he was in lacked

15   inmate grievance forms and holding that "[i]f Marella was unable to file within the fifteen-day

16   [now 30-day] filing period, his failure to file timely does not defeat his claim").

17           Plaintiff argues that after he was transferred to CTC, administrative remedies were still

18   unavailable to him because he had no way of knowing the proper procedure to file them.  Plaintiff

19   was issued a handbook that contained information concerning the inmate grievance process when

20   he first arrived in prison on February 16, 2016.  (Doc. No. 40 at 1 (plaintiff's declaration).)  On

21   March 3, 2016—just over two weeks later—plaintiff was shot.  After leaving the hospital, he was

22   admitted to CTC.  There, he was not permitted to have in his possession either the inmate

23   handbook or any of his other property for his first 30 days at CTC.  (*Id.* at 4 (plaintiff's

---

24

25   [2]  On March 25, 2020, and effective as of June 1, 2020, California Code of Regulations title 15,
     §§ 3084 through 3084.9 were repealed. *See* Cal. Code Regs. tit. 15, § 3084.6 at ¶ 10.  All citations
26   to the California Code of Regulations in this order refer to the code before the repeal.

27   [3]  In defendant's response to a request for admission that refers to "CTC," defendant assumed that
     CTC referred to the Correctional Treatment Center of plaintiff's institution of confinement.  (Doc.
28   No. 40 at 207, response to request for admission number 8.)

1   declaration), 207 (defendant's response to request for admission number 9).)  Plaintiff avers that

2   there were no posters or other information in CTC that alerted him to the inmate grievance

3   procedure.  (*Id.* at 3 ("While at CTC I did not see any informational posters informing of the

4   grievance process, I did not have knowledge of the process, I did not have a Title 15 orientation

5   handbook, I was never given a 602, nor even writing materials.").)  Accordingly, plaintiff argues

6   that the administrative process remained unavailable to him while he was at CTC.  (*Id.* at 48.)

7          Defendant argues that plaintiff's ignorance of the regulations is not an excuse and that he

8   had been given the relevant orientation manual.  (Doc. No. 49 at 6.)

9          Remedies that are "essentially unknowable—so that no ordinary prisoner can make sense

10  of what it demands" are "unavailable."  *Ross*, 136 S. Ct. at 1859.  In the Ninth Circuit, "the

11  particular circumstances of the prisoner's case must be considered when deciding whether

12  administrative remedies were properly exhausted," including whether the inmate grievance

13  procedure is "essentially unknowable."  *Fuqua v. Ryan*, 890 F.3d 838, 850 (9th Cir. 2018); *see*

14  *also Albino v. Baca*, 747 F.3d 1162, 1177 (9th Cir. 2014) (administrative remedies at jail were

15  unavailable where the manual describing procedure was available only to staff and inmate

16  grievance forms had to be requested by detainees but were not given to the plaintiff upon his

17  request); *cf. Wilson v. Zubiate*, 718 F. App'x 479, 482 (9th Cir. 2017) (administrative scheme was

18  *not* "essentially unknowable" because, in part, prisoner "had access to CDCR regulations").[4]

19         Here, plaintiff admits that he was given a handbook that had the details about how to file

20  inmate grievances.  (*See* Doc. No. 40 at 1.)  However, viewing the evidence in the light most

21  favorably to plaintiff as the non-moving party, administrative remedies were unavailable to him

22  for the first 37 days of his incarceration at CTC.  The evidence on summary judgment is that

23  plaintiff was not permitted to have his handbook at CTC and he avers that there were no posters

24  or other available information describing the proper procedure.  (*Id.* at 3.)  Without any

25  reasonable way to know what the relevant administrative grievance system is, plaintiff cannot be

26  said to have had access to it.

27  ────────────────

28  [4]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
    36-3(b).

1    Defendant argues that ignorance of the requirements is no defense, citing the decision in

2    *Stowers v. Hrabko*, 2:18-cv-2177-DB P, 2020 WL 6075654 at * 6 (E.D. Cal. Oct. 15, 2020),

3    *report and recommendation adopted*, 2020 WL 6582265 (E.D. Cal. Nov. 10, 2020).  (Doc. No.

4    49 at 6.)  That case is not on point, since there, "there [wa]s no competent evidence that the legal

5    standards for administrative appeals and regarding the exhaustion requirement were not available

6    to plaintiff."  *Stowers*, 2020 WL 6075654 at * 6.  Here, plaintiff would have to have read and

7    remembered the requirements appearing in the prison handbook that he had access to for only

8    approximately two weeks upon his arrival.  That expectation is unreasonable and unsupported by

9    case law.  Even lawyers and judges must regularly consult legal texts to study their details.  Thus,

10   the court finds that plaintiff has carried his burden to show that administrative remedies were

11   unavailable to him for the first 37 days after the alleged incident occurred.

12      **C. Appeal Log Number WSP-O-17-02402**

13       Nevertheless, even if prisoners cannot file an inmate appeal within 30 days, they are still

14   not necessarily excused from exhaustion of administrative remedies.  Late appeals may be

15   accepted when an inmate lacked "the opportunity to submit within the prescribed time

16   constraints."  Cal. Code Reg., tit. 15 § 3084.6(c)(4); *cf. Marella*, 568 F.3d at 1027 (holding that

17   under this section and prison's interpretation of it, "the prison's regulations explicitly create an

18   exception to the timely filing requirement").  Thus, plaintiff was still required to file an inmate

19   appeal outside the prescribed time constraints, if such an appeal was available, in order to exhaust

20   his administrative remedies.  Plaintiff contends that his appeal log number WSP-O-17-02402 did

21   so.

22       1.  Relevant Facts

23       Plaintiff filed WSP-O-17-02402 on a form 602 as a reasonable accommodation request on

24   June 26, 2017 from Pelican Valley State Prison (PVSP), which is where plaintiff was confined at

25   the time.  (Doc. No. 25-6 at 3 ¶ 10.)  That appeal was routed to WSP, which is where plaintiff was

26   /////

27   /////

28   /////

1   shot.  (*Id.*)  There, prison officials converted the request to a 602 appeal.  (Doc. No. 25-6 ¶ 10.)[5]

2   The appeal stated as follows:

3          I need help filing disability because I can't work a formal two
           handed job the rest of my life unless I can get this fixed.  I need the
4          state to be accountable for its actions:  Excessive force, shooting me
           in the head, paralysis.  I need help performing basic activities.  I
5          need everyone to stop playing stupid and figure out what you
           caused because my hand hurts all day long.  I can't sleep, I can't
6          eat, I can't function normally.  I need an MRI.

7   (Doc. No. 25-6 at 59 (spelling and punctuation modified).)

8          On June 27, 2017, prison officials cancelled the inmate grievance.   The stated reason was

9   because plaintiff was "appealing an issue which occurred on March 3, 2016."  (*Id.* at 57 (spelling

10  corrected).)  According to F. Feliciano, the appeals coordinator at WSP, "[t]he WSP office sent a

11  letter to Plaintiff on June 27, 2017, notifying him that Appeal No. WSP-[O]-17-024202 was

12  cancelled as untimely."  (Doc. No. 25-6 at 3 ¶ 10.)  Plaintiff contends he did not receive that letter

13  until after he filed this lawsuit in 2019.  (Doc. No. 40 at 29, 60).

14         Appeals coordinator Feliciano also states that he is "informed and believe[s]" that plaintiff

15  told interviewers that he did not believe excessive force was used and that he was "just attempting

16  to address his medical needs as a result of the incident."  (Doc. No. 25-6 at 4 ¶ 13.)  Plaintiff

17  disputes this contention in his declaration.  (Doc. No. 40 at 57.)

18         2.   Untimeliness of Appeal

19         Under the then-existing regulations, an inmate appeal could be cancelled if it was not filed

20  in time "even though the inmate or parolee had the opportunity to submit within the prescribed

21  time constraints."  Cal. Code Reg. tit. 15 § 3084.6(c).  The court has already determined that

22  plaintiff did not have the opportunity to submit his inmate appeal within the prescribed time

23  constraints.  Thus, the first issue is whether plaintiff waited too long to file WSP-O-17-02402.

24  /////

25
    _____

26  [5]  Defendants do not argue that WSP-O-17-02402 was improper as being filed as a reasonable
    accommodation request.  (*See* Doc. No. 25-1 at 7–8 (in memorandum in support of motion for
27  summary judgment, referring to the reasonable accommodation request as an inmate grievance);
    49 at 7–9 (arguing WSP-O-17-02402 did not exhaust administrative remedies, but for other
28  reasons).)

1    In *Warner v. Cate*, No. 1:12-cv-01146-LJO-MJS (PC), 2015 WL 9480625, at *3–5 (E.D.

2    Cal. Dec. 29, 2015), *report and recommendation adopted*, 2016 WL 696422 (E.D. Cal. Feb. 22,

3    2016), an inmate complained of an incident that occurred on January 19, 2011.  However, the

4    plaintiff was unable to file a timely inmate appeal until February 25, 2011, which was over 30

5    days later.  *Id.* at *4–5.  The plaintiff eventually filed an appeal in December 2011—around nine

6    months after he was able to do so.  *Id.* at *5–6.  The defendants argued that the plaintiff did not

7    exhaust his administrative remedies because December 2011 was too late to file the inmate

8    appeal.  The court found that the appeal was improperly cancelled as untimely because the

9    plaintiff "did not have the ability or the opportunity to file an appeal within the first thirty days,

10   excusing the untimeliness of his appeal."  *Id.* at *6.

11   The same logic applies here.  Plaintiff was unable to file an appeal within 30 days but

12   filed many months after he became able to do so.  The relevant regulations did not give a timeline

13   for when plaintiff had to file an inmate grievance given his initial lack of opportunity to submit a

14   timely grievance.  Defendant points to no regulations or case law establishing any such

15   timeframe.  Thus, as in *Warner*, the untimeliness of appeal WSP-O-17-02402 does not defeat

16   plaintiff's claims.

17   Defendant next argues that plaintiff filed other inmate grievances between when he was

18   released from CTC and June 26, 2017, indicating that plaintiff was aware of the grievance system

19   and could have used it earlier.  However, as noted above, defendant points to no regulations or

20   case law establishing the proper timeframe for the filing of excusably late appeals.  It is CDCR's

21   responsibility to craft such regulations; the court cannot create regulations that do not exist.  *See*

22   *Marella*, 568 F.3d at 1027 (holding that California's regulations define proper exhaustion).  Thus,

23   defendant has not shown WSP-O-17-02402 was untimely.

24        3.  Appeal of Cancellation

25   Defendant also argues that plaintiff was required to file an inmate appeal concerning his

26   cancelled grievance, and his failure to do so means he did not exhaust his administrative

27   remedies.  (Doc. No. 49 at 8–9.)  A similar issue arose in *Garland v. California Department of*

28   *Corrections*, No. 2:16-cv-01856-JAM-AC P, 2017 WL 283395 (E.D. Cal. June 30, 2017), *report*

7

1    *and recommendation adopted*, Doc. No. 36 (E.D. Cal. Sept. 29, 2017).  There, the plaintiff

2    contended he had never received a cancellation notice, and the defendants did not submit

3    evidence to refute that contention.  *Id.* at *6–7.  The court noted that the cancellation notice did

4    not contain plaintiff's address and that the appeals coordinator's declaration "states in pertinent

5    part only that 'a true copy of the cancellation letter sent to Plaintiff regarding appeal . . . is

6    attached as Exhibit C.' "  *Id.* at *6.  Accordingly, the court found a disputed issue of material fact

7    as to whether the cancellation notice had been received and recommended denying the

8    defendants' motion for summary judgment on exhaustion grounds.  *Id.* at *7–8.

9        Here too, plaintiff has created a genuine dispute of material fact about whether he received

10   the cancellation notice.  As in *Garland*, plaintiff declares he did not receive the notice.  (Doc. No.

11   40 at 29, 60.)  And, as in *Garland*, the notice itself does not show it was sent.  It contains no

12   address or other indications of being sent; there is no attached envelop; and appeals coordinator

13   Feliciano's declaration that "[t]he WSP office sent a letter to Plaintiff on June 27, 2017, notifying

14   him that Appeal No. WSP-B-17-024202 was cancelled as untimely," (Doc. No. 25-6 ¶ 10), is

15   substantially the same as the appeals coordinator's declaration submitted in *Garland*.

16   Accordingly, viewing the facts most favorably to plaintiff, he was not required to file an appeal

17   with respect to the cancellation.

18            4.   Appeal Itself

19       Next, defendant contends that appeal log number WSP-O-17-02402 was defective because

20   it did not comply with prison regulations and because it failed to put prison authorities on notice

21   that plaintiff was alleging that the defendant used excessive force.  (Doc. No. 49 at 7–8.)

22       To exhaust administrative remedies, an inmate grievance must provide the prison with

23   adequate notice of the problem and provide the level of detail required by the prison's

24   regulations.  *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010).  There are two relevant caveats.

25   The first caveat is that "a prisoner exhausts 'such administrative remedies as are available' under

26   the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural

27   problem and render a decision on the merits of the grievance at each available step of the

28   administrative process."  *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (quoting 42 U.S.C.

8

1  § 1997e(a).  The court in *Reyes* relied on the rationales underlying the inmate grievance system.

2  "[T]he primary purpose of a grievance is to alert the prison to a problem and facilitate its

3  resolution, not to lay groundwork for litigation."  *Id.* at 659.  Moreover, "[t]he grievance process

4  is only required to alert prison officials to a problem, not to provide personal notice to a particular

5  official that he may be sued."  The second caveat is that when prison officials improperly screen

6  an appeal, they "render[] administrative remedies effectively unavailable such that exhaustion is

7  not required under the PLRA."  *Sapp*, 623 F.3d at 823.  That is because improperly screened

8  appeals deny inmates the opportunity to "pursue the necessary sequence of appeals, and

9  administrative remedies are therefore plainly unavailable."  *Id.*

10      Here, defendant contends that plaintiff's appeal was insufficient for several reasons.  First,

11  defendant argues that the inmate appeal did not notify prison officials that plaintiff complained

12  about defendant's alleged use of excessive force.  (Doc. No. 49 at 8.)  That is incorrect because

13  prison officials clearly knew what situation plaintiff was referring to.  It is true that the appeal did

14  not mention WSP or the date plaintiff was shot.  However, PVSP officials routed the appeal to

15  WSP, and officials cancelled the appeal as untimely because it concerned "an issue which

16  occurred on March 3, 2016."  (Doc. No. 25-6 at 57 (spelling corrected).)  Thus, the appeal clearly

17  put prison officials on notice that plaintiff was complaining about the March 3, 2016 incident at

18  WSP.

19      Second, defendant contends that the appeal concerned a request for medical assistance and

20  did not relate to excessive use of force.  However, prison officials treated the appeal as raising a

21  claim of excessive use of force when they routed it to WSP and denied it as untimely.  Moreover,

22  the appeal itself clearly stated that plaintiff wanted the state to be "accountable" for the

23  "[e]xcessive force, shooting me in the head, paralysis."  (Doc. No. 25-6 at 59.)

24      Defendant further argues the appeal was about medical assistance because, according to

25  appeals coordinator Feliciano's declaration, plaintiff told unnamed prison officials that the appeal

26  concerned a request for medical assistance, not the use of excessive force.  This argument fairs no

27  better.  The relevant part of Feliciano's declaration was made on information and belief, not

28  personal knowledge.  (Doc. No. 25-6 at 4 ¶ 13 ("As a part of that use of force appeal inquiry, I am

9

1  informed and believe Mr. Felde was interviewed . . . .").)  Statements made "on information and

2  belief" are not entitled to any weight on summary judgment because declarants lack personal

3  knowledge.  *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir.1995).  Even if that

4  declaration were based on personal knowledge, plaintiff disputes this contention in his opposition.

5  (Doc. No. 40 at 57 (averring that he told staff he believed excessive force was used).)

6          Finally, defendant argues that plaintiff's failure to follow the prison's regulations rendered

7  the screening proper.  Indeed, plaintiff failed to "list all staff member(s) involved and [to]

8  describe their involvement in the issue."  Cal. Code Reg. tit. 15 § 3084.2(a)(3).  However, the

9  court must again assume plaintiff did not receive the cancellation notice.  Had he received it, he

10  could have provided a reason why his untimely inmate appeal should have been accepted.  *See*

11  Cal. Code. Reg. tit. 15 § 3084.6(a)(3) ("[A] cancelled appeal may later be accepted if a

12  determination is made that cancellation was made in error or new information is received which

13  makes the appeal eligible for further review.").  Eventually, his appeal would have been

14  reviewed.  It might thereafter have been rejected for failing to provide enough information.  *See*

15  Cal. Code of Regs., tit. 15, § 3084.6(b)(6) (appeal may be rejected when it "makes a general

16  allegation, but fails to state facts or specify an act or decision consistent with the allegation").

17  But prison officials must give notice for the deficiencies in rejected appeals and provide inmates

18  the opportunity to correct those deficiencies.  *Id.* § 3094.6(a)(2) ("An appeal that is rejected

19  pursuant to subsection 3084.6(b) may later be accepted if the reason noted for the rejection is

20  corrected and the appeal is returned by the inmate or parolee to the appeals coordinator within 30

21  calendar days of rejection.").  Failing to provide plaintiff with the cancellation notice deprived

22  him of the opportunity to exhaust these remedies.  Such improper screening "render[ed]

23  administrative remedies effectively unavailable such that exhaustion is not required under the

24  PLRA."  *Sapp*, 623 F.3d at 823.

25      **D.  Evidentiary Hearing**

26          Defendant requests that the court hold an evidentiary hearing to resolve any genuine

27  disputes of material fact that preclude the granting of summary judgment with respect to

28

exhaustion.  (Doc. No. 25-1 at 8.)  Such a hearing is proper in this situation.  *See Albino*, 747 F.3d at 1169–71.

## CONCLUSION

Accordingly,

1.   The findings and recommendations issued on March 26, 2021 (Doc. No. 67) are not adopted;

2.   Defendant Wilkins's motion for summary judgment due to plaintiff's alleged failure to exhaust available administrative remedies (Doc. No. 25) is denied without prejudice; and

3.   This case is referred back to the magistrate judge for the scheduling of an evidentiary hearing on the issue of exhaustion, the making of factual findings in that regard and further proceedings as deemed necessary and appropriate.

IT IS SO ORDERED.

Dated:   __**July 30, 2021**__

_____
UNITED STATES DISTRICT JUDGE

11